**FILED**

**June 3, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.G.-1, E.H., and B.G.**

**No. 21-0106** (Fayette County 19-JA-134, 19-JA-135, and 20-JA-10)

**MEMORANDUM DECISION**

Petitioner Father M.G.-2, by counsel John M. Thompson, appeals the Circuit Court of Fayette County's December 7, 2020, order terminating his parental rights to M.G.-1, E.H., and B.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Vickie Hylton, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the mother, alleging that they had a history of domestic violence with referrals dating back to 2017. The DHHR alleged that services had been previously offered but that petitioner and the mother failed to comply. The DHHR reported that its most recent referral, received in June of 2019, indicated that drug use and domestic violence continued in the home. Child Protective Services ("CPS") workers attempted to contact the parents, but they would not return calls or letters. A CPS worker spoke to a family member, who reported that the parents engaged in domestic violence and left the children with family members for long periods of time without checking on them. The family member reported that she was unsure if the parents were currently

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because one of the children and petitioner share the same initials, we will refer to them as M.G.-1 and M.G.-2, respectively, throughout the memorandum decision.

1

abusing drugs but that it had been an issue for them in the past. In sum, the DHHR alleged that the parents exposed the children to domestic violence, had substance abuse issues which impaired their ability to parent the children, and implicitly expressed their intent to abandon the children.

At an adjudicatory hearing held in December of 2019, petitioner stipulated that he abused and neglected the children. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent. In January of 2020, the mother gave birth to B.H., and the DHHR filed an amended petition adding the child to the proceedings. Later that month, petitioner stipulated to the allegations contained in the amended petition and requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted him a post-adjudicatory improvement period. As part of the terms and conditions of the improvement period, petitioner was ordered to refrain from criminal activity, refrain from possessing or consuming alcohol or controlled substances, submit to random drug screens, obtain and maintain housing and employment, maintain contact with his counsel and the DHHR, participate in all hearings and multidisciplinary team meetings, and participate in all services provided by the DHHR, such as parenting and adult life skills classes and supervised visitation.

The circuit court held a dispositional hearing in November of 2020. A CPS worker testified that petitioner's visits with the children were suspended after he continued to test positive for marijuana or failed to submit to screens throughout the proceedings. Petitioner failed to submit to eight scheduled drug screens throughout June and July of 2020 and tested positive for marijuana and alcohol in August of 2020. Petitioner ceased submitting to drug screens in September of 2020 and also ceased participating in parenting and adult life skills classes and individual therapy. Following this testimony, the circuit court continued the hearing.

The dispositional hearing reconvened in December of 2020. The Director of the Raleigh County Day Report Center testified that he received a referral for petitioner in June of 2020 and that petitioner missed eight scheduled drug screens in June and July of 2020. The Director testified that when petitioner presented to submit a drug screen on August 17, 2020, the Director observed that petitioner was holding the specimen cup and that what appeared to be water was dripping off the cup before petitioner began urinating. The Director took the cup back from petitioner and saw that the temperature indicator on the cup had not activated, indicating that the liquid was not at body temperature. The Director testified that he confronted petitioner with his theory that he had dipped the cup into the toilet water as the liquid was cold and all over the outside of the cup. Petitioner argued with the Director and denied the accusations. However, the Director refused to accept the specimen. Petitioner eventually submitted a specimen that was later confirmed positive for marijuana. The Director testified that petitioner tested positive for marijuana two more times in August of 2020 and thereafter missed fifteen scheduled screens before testing positive for marijuana two more times in October of 2020.

The Director then described another incident that occurred in October of 2020 in which petitioner tampered with the screening process. The Director stated that an employee observed a hose up petitioner's sleeve and asked him to remove his sweatshirt. Petitioner removed the sweatshirt, revealing a second sweatshirt underneath which he refused to remove. The employee asked petitioner to roll up his sleeve and observed a hose, which petitioner quickly tucked up his sleeve each time it appeared. The employee demanded that petitioner turn over the hose to him,

but petitioner refused, and the employee let the matter go for fear of a physical altercation. The Director stated that petitioner had not submitted to a screen since that time.

A CPS supervisor testified regarding services provided to petitioner, including parenting and adult life skills classes, transportation assistance, therapy, and supervised visitation. However, petitioner's services were terminated in July of 2020 due to his noncompliance.

Petitioner testified and admitted to moving out of state for a portion of the proceedings and being evicted from an apartment, but he denied the reasons listed for the eviction in the civil complaint—namely drug abuse and domestic violence. Petitioner conceded that he failed several drug screens and admitted to using marijuana three days prior to the hearing. However, petitioner denied tampering with any drug screens as described by the Director's testimony. Petitioner also generally denied responsibility for his actions, stating "I'm here in this mess . . . because my children's mother would not allow me to be a father." Petitioner also presented the testimony of a friend who testified that petitioner was a good father.

Following testimony, the circuit court found that petitioner failed to substantially comply with the terms and conditions of his improvement period and that he continued to test positive for marijuana. As such, the circuit court concluded that petitioner continued to suffer from a substance abuse problem and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the December 7, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights

---

[2]The mother's parental rights were also terminated below. The permanency plan for the children is adoption by their foster family.

upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. As noted above, petitioner was provided services such as random drug screening, parenting and adult life skills classes, therapy, and supervised visitation. However, petitioner failed to participate in services such that they were suspended due to his noncompliance. Further, petitioner missed several screens during the proceedings or tested positive for marijuana or alcohol when he did screen. Testimony at the dispositional hearing also indicated that petitioner attempted to tamper with the drug screening process on two occasions. Petitioner was evicted from his home during the proceedings and failed to maintain consistent employment. Lastly, petitioner denied responsibility for his actions and blamed the mother for the situation.

This Court has previously noted that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the issues of abuse and neglect despite the provision of services below, we find that the circuit court did not err in terminating his parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 7, 2020, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  June 3, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton